[No. 7094.   Decided April 25, 1908.]

THE STATE OF WASHINGTON, *on the Relation of John D. Atkinson, Attorney General, Appellant,* v. JAMES DUNLAP *et al., Respondents.*[1]

EVIDENCE—CUSTOM.   Proof of a custom to take deeds for state roads in the name of a county is inadmissible where the statute requires them to be taken in the name of the state.

HIGHWAYS—ABANDONMENT TO COUNTY—SALE TO RAILROAD—RIGHTS OF STATE—CONTROL.   Under Bal. Code, § 4338, authorizing a railroad company to appropriate any part of a public highway not within the limits of a municipal corporation, and providing that the county commissioners may agree upon the terms of the appropriation, county commissioners may sell to a railroad company a road which it had taken possession of and destroyed as a highway; and mandamus will not lie at the instance of the state to compel the county to oust the company and keep the road open, although the road was constructed in part with funds received from the state, where it would have been impracticable to keep the road in repair, the commissioners had constructed another road to take its place, and it appears that they were charged with the control of the road, and exercised their best judgment in the matter.

[1]Reported in 95 Pac. 321.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered May 3, 1907, denying a writ of mandate to compel the commissioners of a county to repair a highway appropriated by a railroad for right of way purposes. Affirmed.

*The Attorney General, J. B. Alexander, Assistant,* and *Fred W. Neal,* for appellant.

*M. P. Hurd, J. C. Waugh,* and *Smith & Brawley,* for respondents.

Root, J.—This action was brought by the state of Washington, on the relation of the attorney general, praying that a writ of mandate issue against the county commissioners of Skagit county, compelling them to repair that portion of a certain wagon road between the town of Blanchard, in Skagit county, and the line between that and Whatcom county, which road had been appropriated and destroyed by the Seattle and Montana Railroad Company. From a judgment of the superior court denying the writ, the state has appealed to this court.

By an act approved March 22, 1895 (Laws 1895, p. 458), the legislature provided for a state wagon road through the Cascade mountains, and made an appropriation therefor; and it also provided in the same act that there should be expended "the sum of $4,000 for the purpose of laying out, establishing and constructing a wagon road from Blanchard, in Skagit county, to the boundary line between Skagit and Whatcom counties." The board of state road commissioners, acting pursuant to an understanding with the commissioners of Skagit county, expended the $4,000 in the construction of two miles of the road extending from the county line south toward Blanchard, and the county commissioners expended $6,000 in completing three miles more of the road. In August, 1901, the Seattle and Montana Railroad Company made a proposition to the board of county commissioners to purchase a right of way through the lands where this public

road ran, and offered therefor the sum of $8,000. The high-
way had been found to be a very expensive one to keep in
repair, as it extended through a mountainous country and
had many grades so steep that it could be used to little ad-
vantage. In consideration of $8,000 the county commission-
ers consented to the railroad company entering into posses-
sion of portions of this road, and that company appropriated
the highway at three points in such a manner as to destroy
it as a thoroughfare. The commissioners thereupon caused to
be surveyed and laid out another road from Skagit county to
the Whatcom county line, connecting with the county road
system of the latter county.

The appellant contends that the road in question was a
state road, that the commissioners had no authority to au-
thorize the railway company to appropriate or take posses-
sion of it, and that the company in so doing became a tres-
passer, and that it is the duty of the county commissioners to
eject it therefrom, and repair the road as a public highway.
Respondents contend that it was not a state road, but a public
road under the supervision and control of the county commis-
sioners, and that it was discretionary with them to abandon
said road or sell the interests of the public therein whenever
it was deemed proper so to do.

It appears that the commissioners laid out this road and
that the rights of way therefor were obtained in the name of
the county, and that it is known upon the public records of
said county as the "John Behren's road." The railroad com-
pany in constructing its road made large cuts through the
rock, and in so doing destroyed portions of this highway and
made it impassable. Respondents call attention to the fact
that the legislative act hereinbefore mentioned did not con-
template that the road from Blanchard to the county line
should be a state road, and that this is evidenced by the fact
that said road is not mentioned or referred to in the title of
the act; that it was the purpose of the state practically to
donate to Skagit county the $4,000 to assist in the construc-
tion of this difficult piece of road whereby the two counties

might be connected. The appellant contends that the $4,000 of state money was expended in contemplation of the expenditure by the county of the $6,000, and that the commissioners had no right to abandon the road constructed pursuant to this arrangement. Sections 6 and 7 of the act of 1895 direct that the state road commissioners shall take deeds for rights of way in the name of the state, and that, where deeds cannot be obtained, a right of way may be condemned. In this instance, however, all the deeds for rights of way seem to have been taken in the name of the county. This would hardly indicate an intention to establish a state road instead of a county road. The action of the trial court in excluding evidence as to a custom of taking rights of way or waivers for state roads in the name of the counties is assigned as error. It would seem that proof of a custom of this character would hardly be permissible in the face of §§ 6 and 7 of the statute above referred to.

Section 12 of the legislative act of 1895 made it the duty of the county commissioners to keep the state road through the Cascades in repair. · This law, however, was repealed in 1897, without any saving clause. There is nothing in the latter statute relating to the road in question here. Prior to the 24th of August, 1901, the railroad company had taken possession of this road and destroyed its usefulness as a highway, and the commissioners, believing it impracticable or impossible to repair the road, passed a resolution to the effect that the county should accept the $8,000 from the railroad company, and that a quitclaim deed should be executed. This deed appears not to have been issued, and it is urged that the railroad company is in possession of this highway unlawfully and is consequently a trespasser. Bal. Code, § 4338 (P. C. § 7093), authorizes a railroad to appropriate any part of a public road not within the limits of a municipal corporation, and provides that the county commissioners of the county where the road is situated may agree upon the terms and conditions of the appropriation. Bal. Code, § 4334 (P. C. § 7089), provides that such railway shall be holden:

to the county commissioners or county for all expenses incurred in relocating and opening the portion of the road appropriated. It would appear under these statutes that the county commissioners were powerless to prevent this railway company from taking possession of this highway, and it would also seem that the commissioners were justified in making an adjustment with the railroad company whereby they obtained the $8,000 for the benefit of the county. The new road, which was laid out and intended to give the service which had formerly been given by the abandoned road, was shown to have cost at the time of the trial some $8,000, and to require some $4,000 more for its completion. We think it satisfactorily appears from the evidence that it would have been highly impracticable to have repaired the old road, that it never could have been made a satisfactory highway, and that its continuance would have necessitated large expenditures, for which it would have given very poor service in return. We think it was a county road over which the commissioners had supervision.

There is no contention that they had any personal interest in the transactions involved or that their actions were in any wise attended by fraud or improper considerations. They appear to have exercised their judgment in dealing with a matter which the statute brings within their official province. The view we entertain upon the merits of the case makes it unnecessary for us to pass upon the question of the right of the state upon the relation of the attorney general to maintain a proceeding of this character.

The judgment of the superior court is affirmed.

FULLERTON, MOUNT, CROW, RUDKIN, and DUNBAR, JJ., concur.